UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                            :
SARL LOUIS FERAUD INTERNATIONAL,            :
                                            :
                          Plaintiff,        :
                                            :
         -against-                           :      04 Civ. 9760 (GEL)
                                            :
VIEWFINDER INC. d/b/a FIRSTVIEW,            :
                                            :
                          Defendant.        :
                                            :
-----------------------------------------------------------x

-----------------------------------------------------------x             **OPINION AND ORDER**
                                            :
S.A. PIERRE BALMAIN,                        :
                                            :
                          Plaintiff,        :
                                            :
         -against-                           :      04 Civ. 9761 (GEL)
                                            :
VIEWFINDER INC. d/b/a FIRSTVIEW,            :
                                            :
                          Defendant.        :
                                            :
-----------------------------------------------------------x

James P. Duffy, III, Berg and Duffy, LLP,
Lake Success, New York, for Plaintiffs Sarl
Louis Feraud International and S.A. Pierre Balmain.

Steven J. Hyman and Paul H. Levinson,
McLaughlin & Stern, LLP, New York, New York,
for Defendant Viewfinder Inc.

GERARD E. LYNCH, District Judge:

  The plaintiffs in these consolidated and essentially identical actions, French corporations that design and market high-fashion clothing, bring this action to enforce a default judgment

obtained by them in a French court against Viewfinder Inc., a Delaware corporation that maintains websites on which it posts photographs from fashion shows and other information about fashion events. In the French action, plaintiffs maintained that defendant made unauthorized use of their intellectual property and engaged in unfair competition by posting photographs of models wearing clothing of their design at various fashion shows. Defendant moves for dismissal and/or summary judgment on various grounds. The motions will be granted and judgment entered for defendant.

## BACKGROUND

The following facts appear to be undisputed, except where otherwise noted.

In January 2001, plaintiffs brought an action against Viewfinder in the Tribunal de Grande Instance de Paris, seeking damages for unauthorized use of their intellectual property and unfair competition.[1] Although Viewfinder was served in the action by the United States Marshal in accordance with the Hague Convention, it failed to answer the complaint or appear in the French action. Accordingly, in May 2001 the French court entered a default judgment, and granted relief in favor of the plaintiffs. The relief included damages totaling 1,000,000 francs ($183,007.42)[2] —500,000 francs for each plaintiff—as well as the costs of the action, and a coercive fine ("*astreinte*") of 50,000 francs per day for each day that Viewfinder failed to comply

---

[1] In fact, the plaintiffs filed separate actions. Because the actions were identical, and because the proceedings on the resulting judgments have been consolidated in this Court, the Court will use treat the actions as a single lawsuit, and will use the singular construction in describing the French proceedings, in the interest of simplicity.

[2] The exchange rate of the French franc is locked to the euro at 6.55957 francs. See Euro Banknotes & Coins, at http://www.euro.ecb.int/en/section/conversion.html (Sept. 28, 2005). The September 28, 2005 edition of the New York Times lists the exchange rate of euros to dollars as 1.00-1.20045.

with each judgment. In October 2003, Viewfinder appealed the judgment to the Cour d'Appel de Paris, but the appeal (which was apparently untimely in any event) was withdrawn without opposition in January 2004, after plaintiffs filed their brief, and the appeal was duly dismissed in February 2004.

Plaintiffs eventually brought this action in December 2004, seeking to enforce the French judgment. Because Plaintiffs are French corporations (Compl. ¶ 3), defendant is a Delaware corporation (Ashby Decl. ¶ 2), and the amount in controversy exceeds $75,000 (Compl. ¶ 1) this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## DISCUSSION

Defendant moves to dismiss or for summary judgment. Since all of the facts relevant to the resolution of the matter are contained either in the complaint, or in materials (such as the records of the French proceedings or the defendant's websites) that are either referred to in the complaint or of which the Court may take judicial notice, and are in any event undisputed, it matters little how the motions are characterized. Neither party has opposed summary judgment on the ground that material issues of fact preclude resolving the case as a matter of law on the present record, or on the ground that further discovery is needed, see Fed. R. Civ. P. 56(f).

Defendant argues against enforcement of the French judgment on a variety of grounds. Only one of its arguments has merit; however, since that argument is of constitutional dimension, the Court must address all other issues first in order to assure that it is necessary to resolve the constitutional question.

I. Finality

The original motion papers submitted by the parties devote a great deal of attention to

3

whether the French judgment is or is not an enforceable final judgment. The principal bone of contention was the *astreinte* imposed by the French court for violation of its order that Viewfinder remove from its website the material about which plaintiffs complained. Viewfinder argued that under French law, this aspect of the judgment was incomplete, and needed to be reduced to a fixed judgment in separate proceedings before another French tribunal. (Def. Mem. 7-9.) Plaintiffs, in contrast, contended that the judgment was final and enforceable. (Pl. Mem. 3-4.)

This dispute, however, has become moot. On February 9, 2005, ten days before plaintiffs responded to defendant's motion to dismiss, plaintiffs in fact undertook the necessary proceedings before the Juge de l'Exécution of the French court to reduce the *astreinte* to a fixed amount. Plaintiffs advised the Court in a letter dated March 7, 2005, that the matter should be held in abeyance until these proceedings were concluded, thus eliminating any question as to the finality of the judgment in question.

On June 13, 2005, however, the French judge entered an order declining to enforce the penalty by reducing it a liquidated amount, finding that plaintiffs had submitted insufficient proof of a continuing violation of the court's order. Tribunal de Grande Instance [T.G.I.] [County Court] Paris, June 13, 2005, RG No. 05/81354.[3] Accordingly, there can now be no question that

---

[3] Plaintiffs maintain that this Court should disregard this decision, claiming that it was obtained by unethical advocacy, and that they have appealed the decision. See Letter from James P. Duffy, III, Esq., Plaintiff's Counsel, to the Court (July 11, 2005) (on file with the Court). This argument is unpersuasive, particularly coming from parties whose entire cause of action is premised on the need for respect for foreign judgments. This Court is in no position to collaterally review the determination of a French judge that evidence presented to him was insufficient to warrant granting relief requested under French law, and plaintiffs are in no position to demand enforcement in New York of a French judgment which a French judge has declined to put into effect.

the *astreinte* is no longer enforceable.[4]

The unenforceability of the *astreinte*, however, does not affect the judgment for damages. As the Second Circuit has recognized, "courts are not limited to recognizing a [foreign] judgment entirely or not at all. Where a foreign judgment contains discrete components, the enforcing court should endeavor to discern the appropriate 'extent of recognition,' with reference to applicable public policy concerns." Ackermann v. Levine, 788 F.2d 830, 844 (2d Cir. 1986) (citation omitted). Although defendant argues, without citation to authority, that the Court cannot determine, without an affidavit from an expert in French procedure, whether the French judgment is severable, logic points in the opposite direction. The French judgment clearly contains both backward- and forward-looking remedies, awarding damages and costs for past harm, and also awarding prospective relief in the nature of an injunction backed by coercive penalties analogous to a civil contempt fine under American law. The decision of the Juge de l'Exécution refusing to reduce this fine to a fixed amount is based on a finding that plaintiffs had failed to prove an ongoing violation of the original order. That decision has no logical bearing on the award of compensation for past violations, and absent citation of some authority to the contrary by defendant, there is no reason whatsoever to believe that the compensatory aspect of the original judgment is affected in any way by the failure to enforce the *astreinte*.

---

[4] This conclusion also moots defendant's argument that the *astreinte* is unenforceable as a penal judgment. See N.Y. C.P.L.R. 5301(b); Huntington v. Attrill, 146 U.S. 657 (1892); Republic of Iraq v. First Nat'l City Bank, 241 F. Supp. 567 (S.D.N.Y.), aff'd, 353 F.2d 47 (2d Cir. 1965).

II. Repugnance

Defendant argues that the French judgment's compensatory remedies may not be enforced because they are "repugnant" to American law, and therefore unenforceable, in three different respects: first, because the damages awarded are excessive and bear no reasonable relation to plaintiffs' actual damages; second, because the underlying French law is inconsistent with American copyright and intellectual property principles; and third, because enforcement of the judgment would be inconsistent with the First Amendment.  Only the last of these arguments has merit.

   A. General Principles

"The extent to which the law of one nation . . . shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call 'the comity of nations.' . . . 'Comity' . . . is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 163-64 (1895).  "Comity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." Cunard S.S. Co. v. Salen Reefer Servs. AB, 773 F.2d 452, 457 (2d Cir. 1985).

Where, as here, federal jurisdiction rests on diversity of citizenship, federal courts look to the law of the forum state in determining the enforceability of foreign judgments. S.C. Chimexim S.A. v. Velco Enters., Ltd., 36 F. Supp. 2d 206, 211 (S.D.N.Y. 1999). Under New York's Uniform Foreign Judgment Recognition Act, N.Y. C.P.L.R. 5302, foreign civil judgments are generally enforceable, with certain exceptions set forth in C.P.L.R. 5304. In particular, New York gives courts discretion to refuse to enforce a foreign judgment that "is repugnant to the public policy of this state." C.P.L.R. 5304(b)(4). Viewfinder relies on this principle in resisting enforcement of plaintiffs' judgment.

B. Calculation of Damages

Viewfinder first argues that the award of 500,000 francs ($91,503.71) in damages and 15,000 francs ($2,745.11) in costs was not based on specific proof of actual damages, but rather was "arbitrarily selected." (Def. Mem. 9.) Viewfinder then goes on to attack the French judgment for inconsistency with French law, arguing that French law permits only the award of proven loss or damage, but that in this case no evidence was presented, and identical awards were entered in favor of a number of similarly situated plaintiffs. Noting that New York law disfavors contractual liquidated damage clauses that impose a penalty for breach and are excessive in relation to actual damage, see e.g., Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420 (1977), it claims that this error in calculating damages renders the award contrary to the public policy of New York.

This argument is unpersuasive. First, it is not for this Court to evaluate the French court's compliance with its own governing law. Defendant acknowledges that "[u]nder French law, only proven loss or damage may be awarded." (Def. Mem. 9.) French law on this point is thus

7

squarely in accord with New York law, and this Court will not second-guess the French court's analysis of the record before it to determine whether the court has properly applied its own principle.

Second, it is important to recall that Viewfinder *defaulted* in the French proceeding. While a default does not excuse a court from determining the amount of damages due as a matter of law, a party's default limits the court's ability to make a precise calculation of damages. Under New York law in cases of default where damages are not a sum certain, a judge must approve the award of damages and "may make an assessment or take an account or proof" before so doing. N.Y. C.P.L.R. 3215(b). Whether or not such an assessment was conducted here is irrelevant. That the calculation of damages by the French court was made pursuant to a default as opposed to an adversarial evidentiary contest does not render the calculation any less enforceable. "A judgment by default is as conclusive as any other judgment." Willametz v. Munch, 311 N.Y.S.2d 765, 767 (Sup. Ct. 1970), aff'd 37 A.D.2d 695 (N.Y. App. Div. 1971); accord, Crouse v. McVickar, 100 N.E. 697, 697 (N.Y. 1912). Viewfinder elected first to ignore the French proceeding, then to file and withdraw a belated appeal that might have permitted it to challenge the damage calculation. While it is not clear that collateral estoppel fully applies to the largely discretionary decision whether the foreign judgment is repugnant to domestic policy, Viewfinder's failure to avail itself of the opportunity to contest damages argues against close scrutiny in this Court of the basis on which those damages were calculated.

Finally, while New York law disfavors contractual penalty clauses, there is nothing repugnant to New York or American legal principles about statutory damages in intellectual property cases. For example, such damages are specifically allowed by U.S. domestic copyright

8

law in cases in which a plaintiff's actual damages cannot be ascertained, up to $150,000 for willful copyright infringement. See 17 U.S.C. § 504. The Lanham Act similarly authorizes the award of damages for trademark violations up to three times the amount of plaintiff's actual damages, authorizes an additional award equal to defendant's profits, and then authorizes the court to award an even greater amount if damages would otherwise be "inadequate." 15 U.S.C. § 1117(a).

The test for application of C.P.L.R. 5304(b)(4) is not whether the foreign law on which the judgment depends is perfectly congruent with domestic law on the same subject, or whether the identical judgment could have been obtained in New York on the same facts. See, e.g., Parker v. Hoefer, 2 N.Y.2d 612 (1957) (enforcing foreign judgment despite fact that New York legislature had abolished cause of action in state). Rather, the test is whether the award "is repugnant to the public policy of this state." C.P.L.R. 5304(b)(4). On these facts, the Court cannot say that an award of 500,000 francs in damages for an intellectual property violation, even if those damages are regarded as a fixed, statutory award rather than as proven damages, is repugnant to domestic law.[5]

C. Copyright Law

Viewfinder next argues that the French judgment is repugnant because it is inconsistent with American intellectual property law. According to Viewfinder, its photographs could not be

---

[5] Viewfinder also challenges the award of costs, arguing that the French court should have considered Viewfinder's economic circumstances in making the award. (Def. Mem. 10.) Viewfinder does not argue that plaintiffs did not incur costs in the awarded amount, and by defaulting Viewfinder spurned the opportunity to put its circumstances before the court. On this record, this Court has no basis whatever for questioning the appropriateness of the cost award, let alone for deciding that it is repugnant to the public policy of the state.

found to violate plaintiffs' property interests under U.S. law, because plaintiffs could not copyright their dress designs, because Viewfinder's activities would not violate American trademark principles, and because its activity would constitute fair use even if they otherwise would infringe plaintiffs' copyrights or trademarks.

Viewfinder's assertion that its activities would not give rise to liability under domestic intellectual property principles is difficult to assess. Because the judgment was entered on default, there was little evidence of its activities before the French court, and the record before this Court is based on extensive affidavits and supporting materials submitted by each side. Neither party has briefed the copyright and trademark issues thoroughly. But it is unnecessary to adjudicate these issues. Assuming arguendo that Viewfinder is correct about American law, the issue here is not whether the actions alleged against it in France violate American law; rather, it is whether the judgment of the French court imposing liability under French law is repugnant to the public policy of the State of New York.

"A judgment is unenforceable as against public policy to the extent that it is repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." Ackermann v. Levine, 788 F.2d 830, 841 (2d Cir. 1986), quoting Tahan v. Hodgson, 662 F.2d 862, 864 (D.C. Cir. 1981). The characteristics of French intellectual property law that Viewfinder alleges differ from the rules in the Untied States do not come close to meeting this standard. Copyright and trademark law are not matters of strong moral principle. Intellectual property regimes are economic legislation based on policy decisions that assign rights based on assessments of what legal rules will produce the greatest economic good for society as a whole. Different countries will, at different times, reach different conclusions as to the types of creative

endeavor that should receive the benefit of copyright protection and the extent of that benefit, and different conclusions as to the kinds of competitive activity that should be encouraged or discouraged by trademark law. If the United States has not seen fit to permit fashion designs to be copyrighted, that does not mean that a foreign judgment based on a contrary policy decision is somehow "repugnant to the public policies underlying the Copyright Act and trademark law." (Def. Mem. 2.) "Under New York law[,] . . . foreign decrees and proceedings will be given respect . . . even if the result under the foreign proceeding would be different than under American law." Drexel Burnham Lambert Group Inc. v. Galadari, 610 F. Supp. 114, 118 (S.D.N.Y.), vacated in part on other grounds, 777 F.2d 877 (2d Cir. 1985). Assuming arguendo that Viewfinder has shown that American copyright and trademark law would not have led to the same result, the judgment will still be enforced, since the alleged differences do not involve "fundamental notions of what is decent and just" in New York.[6]

D. Freedom of Expression

Viewfinder's last, and sole persuasive, argument is that the French judgment is "repugnant to fundamental notions of what is decent and just" because Viewfinder's conduct is protected by the First Amendment. The freedoms of speech and of the press protected by the First Amendment are not mere vagaries of legal policy, matters of legal detail that might as easily have been resolved differently by our legislatures or courts. Freedom of speech is a matter of constitutional command, binding even on the will of the majority as expressed in legislation. The very Congress of the United States "shall make no law abridging the freedom of speech, or

---

[6] To the extent that Viewfinder's fair use argument has constitutional overtones, that argument is addressed below.

of the press." Even among the basic human rights protected by the United States Constitution, the First Amendment occupies a special place. As Justice Cardozo put it, the American legal tradition "reflects a pervasive recognition of th[e] truth" that freedom of speech is "the matrix, the indispensable condition of nearly every other freedom." Palko v. Connecticut, 302 U.S. 319, 327 (1937).

This is not to say that every detail of First Amendment law, as developed in the United States, is equally indispensable to the maintenance of a free society. Many democratic countries, which share our general commitment to human rights and maintain free and open societies in which freedom of speech and thought is fully respected, differ from us in the resolution of certain questions involving the balance between freedom of expression and the maintenance of ordered liberty, particularly in areas where freedom of expression may be in tension with the protection of other human rights, such as equality or human dignity. Even in those areas, however, where reasonable people and decent societies may reasonably disagree, American courts have recognized that foreign judgments that run afoul of First Amendment values are inconsistent with *our* notions of what is fair and just, and conflict with the strong public policy of *our* State.

For example, while many European countries feel that even freedom of speech must yield to a prohibition on hate speech that advocates repugnant political systems, American courts have declined to enforce foreign judgments restricting access to Nazi propaganda. Yahoo!, Inc. v. La Ligue Contre le Racisme et l'Antisemitisme, 169 F. Supp. 2d 1181 (N.D. Cal. 2001), rev'd on other grounds, 379 F.3d 1120 (9th Cir. 2004), reh'g en banc granted, 399 F.3d 1010 (9th Cir. 2005). Similarly, although the United Kingdom, the country from which our libertarian traditions are directly derived, imposes liability for libel where the First Amendment forbids such

liability in the United States, New York courts have refused to enforce English libel judgments that would be inconsistent with the First Amendment and the equivalent provision of the New York constitution. Bachchan v. India Abroad Publ'ns Inc., 585 N.Y.S.2d 661 (Sup. Ct. N.Y. Co. 1992); Abdullah v. Sheridan Square Press, Inc., No. 93 Civ. 2515, 1994 WL 419847 (S.D.N.Y. May 4, 1994); see also Telnikoff v. Matusevitch, 702 A.2d 230, 244 (Md. 1997) (rejecting enforcement of English libel judgment under Maryland's similar statutory and constitutional provisions).

There is no question that Viewfinder's activities fall within the purview of the First Amendment. That those activities do not involve the expression of political opinions does not defeat the relevance of the Amendment. The subject matter of protected expression extends beyond the political to include matters of cultural import, see Bery v. City of New York, 97 F.3d 689, 695 (2d Cir. 1996) ("Visual art is as wide ranging in its depiction of ideas, concepts and emotions as any . . . writing, and is similarly entitled to full First Amendment protection."), and the medium of photography is within the realm of free expression of ideas and communication of information that the Amendment protects, see Tunick v. Safir, 209 F.3d 67, 82 (2d Cir. 2000) (nude photography protected by the First Amendment); see also Massachusetts v. Oakes, 491 U.S. 576, 591 (1989) (Brennan, J., dissenting) ("Photography, painting, and other two-dimensional forms of artistic reproduction . . . are plainly expressive activities that ordinarily qualify for First Amendment protection."), W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 632 (1943) ("Symbolism is a primitive but effective way of communicating ideas.") Fashion shows are a matter of great public interest, for artistic as well as commercial purposes. These shows are open to the public, including the press—indeed, defendant's employees and agents

13

were able to take the photographs at issue because they were given access by invitation (Ashby Decl. ¶¶ 18, 19)[7]—and the extensive coverage given to such events in various mass media makes clear that there is widespread public interest in these matters.

Plaintiffs make a number of arguments in an effort to deflect the conclusion that Viewfinder's publication of its photos is constitutionally protected. First, they question whether defendant's "conduct possesses sufficient communicative elements to bring the First Amendment into play," noting that the Supreme Court has stated that the test for an affirmative answer is whether "an intent to convey a particularized message was present, and the likelihood was great that the message would be understood by those who viewed it." (Pl. Mem. 15, quoting Spence v. Washington, 418 U.S. 405, 410-11 (1974)). But Spence is wholly inapposite here. That case involved flag-burning, and presented the difficult question of when *conduct* that would otherwise violate a law having no relation to expression nevertheless derives communicative content because it is intended and understood to convey a non-verbal message.[8] The Supreme Court has never applied the Spence test, as plaintiffs would have this Court do, to decide whether the publication of a verbal news item or a photograph has sufficient expressive content to warrant First Amendment protection. Such an application of the test would in itself run afoul of basic First Amendment principles, because it would require the Court to assess the artistic or communicative quality of defendant's work. Neither words nor photographs can be censored

---

[7]Plaintiffs do not contest this claim in any of their submissions. To the extent that it is relevant to this motion it is deemed admitted for that purpose.

[8] City of Dallas v. Stanglin, 490 U.S. 19 (1989), on which plaintiffs rely to similar effect, is even less apposite, involving a challenge to an ordinance restricting admission to certain dance halls to persons between the ages of 14 and 18.

because a court decides that they "bring very little, if any, creative element" to bear on their subject matter. (Pl. Mem. 16.)

Nor are the photographs deprived of First Amendment protection because Viewfinder's website provides "virtually no news or information . . . about any of the designers' collections other than the photos and in some cases, brief biographies of the designers." (Id.) A picture, as the cliché would have it, is worth a thousand words, and the defendant's decision to forgo an effort to describe the designers' creations verbally in favor of a more efficient visual presentation does not defeat protection. The nature of the designers' work *is* the "news or information" to be conveyed, and the photographic medium is the ideal way to convey it. The notion that photographers merely reproduce reality, and do not apply a creative, or even distorting, eye to the events depicted is long discredited.[9] The photographer selects the image to be reproduced, capturing a particular angle of view, and that image conveys, in the case of plaintiffs' creations, at best a partial, two-dimensional impression of the actual work. Plaintiffs are correct that "First Amendment protection does not extend to copying the works of others." (Pl. Mem. 17.) But that is not what has occurred here. Viewfinder has not *copied* plaintiffs' dresses; it has displayed a particular depiction of them.[10]

---

[9] That Viewfinder does not editorialize about plaintiffs' work, but confines itself to providing basic information about it, is not germane. A news medium is not required, in order to secure First Amendment protection, to provide "editorial content discussing any collection, its merits or lack thereof," or to provide "articles about fashion, trends in fashion, or the like." (Pl. Mem. 16.) It is not up to plaintiffs, or to this Court, to decide what "editorial content" we would like to see on a fashion website.

[10] Like Magritte's famous painting of a pipe, one of defendant's photos *n'est pas une robe*—it's merely a *picture* of a dress.

Nor is the First Amendment inapplicable because Viewfinder's publication is designed "to sell subscriptions to the site, photos of the designers' collections found on the site, and other items advertised on the site." (Pl. Mem. 16.) Much the same could be said of most magazines and newspapers, or of the work of any free-lance reporter or photographer who seeks to sell her work to such media outlets. A photograph or news item does not lose its quality as either art or as valuable information because the writer or photographer makes his living by selling it. Even "commercial speech" is entitled to some protection under the First Amendment. Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748 (1976). To the extent that defendant's speech is conceived as advertising, it still does not fall within range of cases like Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376 (1973), cited by plaintiffs. Defendant is not proposing an unlawful commercial transaction, but simply the sale of a news photograph of a public event.

The lower-court cases on which plaintiffs rely are for the most part as inapposite as the Supreme Court authority they cite. Bosley v. Wildwett.com, 310 F. Supp. 2d 914 (N.D. Ohio 2004), Comedy III Prods., Inc. v. Gary Saderup, Inc., 21 P.3d 797 (Cal. 2001), and Estate of Presley v. Russen, 513 F. Supp. 1339 (D.N.J. 1981), all involve efforts to capitalize commercially on the image of a celebrity. As the Bosley court noted, however, the rights of privacy and publicity involved in such cases are subject to a constitutionally compelled "public affairs or newsworthiness exception." 310 F. Supp. 2d at 923 & n. 7 (collecting cases). Similarly, even were plaintiffs' designs copyrightable, the copyright law similarly provides, as a matter of First Amendment necessity, a "fair use" exception for the publication of newsworthy matters.

These exceptions are not without limitation. In Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562 (1977), the Supreme Court permitted, by the narrowest of margins, an action by a performer against a television station that broadcast a videotape of his entire—albeit extremely brief—"human cannonball" act. The Court pointed out that the broadcast of the event, however newsworthy, posed a dramatic threat to Zacchini's ability to profit from his unique skill as an entertainer: "[I]f the public can see the act free on television, it will be less willing to pay to see it at the fair." Id. at 575. But this limitation does not apply in this case. Here, defendant has not preempted plaintiffs' "entire act," id., whether that "act" is conceived as the fashion show or the designs themselves. Defendant has published only isolated still photographs of the fashion show, not a videotape of the entire event, and plaintiffs make their living by selling dresses, not photographs thereof. It is hardly the case that potential purchasers of plaintiffs' dresses will be satisfied by seeing pictures of those dresses for free on the internet. It may be the case, as plaintiffs claim, that some purchasers of defendant's photos will use them in an effort to create "knock-off" or copycat designs that might cut into the demand for plaintiffs' creations. But such use is too remote from defendant's activities to deprive the public of information about newsworthy events. The First Amendment simply does not permit plaintiffs to stage public events in which the general public has a considerable interest, and then control the way in which information about those events is disseminated in the mass media.

Accordingly, the French default judgment is incompatible with the First Amendment and with Article 1, Section 8 of the New York State Constitution. To enforce it would therefore be repugnant to the public policy of this State, in violation of C.P.L.R. 5304(b)(4).

## CONCLUSION

For the reasons stated above, plaintiffs' action is dismissed, and the order of attachment previously entered by this Court is accordingly vacated.

SO ORDERED.

Dated: New York, New York
September 29, 2005

_____
GERARD E. LYNCH
United States District Judge